IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARRYL SCOTT RANDLE,**       Case 5:15 CV 96

    Plaintiff,

    v.                                                Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                  MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Darryl Randle ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 15). For the reasons stated below, the undersigned reverses the Commissioner's decision to deny benefits and remands for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on June 9, 2011, alleging an onset date of March 26, 2008.[1] (Tr. 221-30). Plaintiff applied for benefits due to diabetes, high blood pressure, and heart attack. (Tr. 112, 122). His claims were denied initially and upon reconsideration. (Tr. 112-131, 134-155). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 45). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on May 30, 2013, after which the ALJ found Plaintiff not disabled. (Tr. 8-21, 46-111). The Appeals

---

1. Plaintiff later amended his alleged onset date to May 29, 2011. (Tr. 50, 201).

Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on January 16, 2015. (Doc. 1).

## FACTUAL BACKGROUND

*Personal Background and Testimony*

Born March 9, 1964, Plaintiff was 49 years old on the hearing date. (Tr. 64). He lived in a house with his brother and, although he had a driver's license, he did not drive due to his medication. (Tr. 65-66). Plaintiff graduated high school and had past work as a pressman helper at a printing company. (Tr. 68).

Plaintiff's main complaints were trouble breathing and constant dizziness, but he also complained of chest pain about once every two weeks. (Tr. 70, 77, 86). Plaintiff stated he had been on multiple medications but they were unsuccessful at controlling his symptoms. (Tr. 77-84). He also administered insulin twice daily, which he stated made him dizzy. (Tr. 85). Plaintiff testified further that the dizziness caused him to black out about once or twice a month. (Tr. 87).

As for activities of daily living, Plaintiff stated each morning he showered, took his pills, ate breakfast, and tried to take a walk. (Tr. 75). He testified he could walk about block before he needed to rest for five to fifteen minutes to catch his breath. (Tr. 75). Prior to his mother's death, she performed most of the chores in the household and friends or relatives did the yardwork at the home. (Tr. 72). He stated that although he performed his own personal care, it took him a longer time to do so because of his shortness of breath. (Tr. 272). He also reported barely being able to cook and the inability to perform household chores. (Tr. 273).

*Relevant Medical Evidence*[23]

On May 29, 2011, Plaintiff was seen at Aultman Hospital by cardiologist Stephen Malosky, M.D., where he was diagnosed with acute myocardial infarction and received a heart catheterization, angiography, and stent. (Tr. 318, 322-23). The procedure was successful and Plaintiff was discharged home a few days later. (Tr. 330). On June 29, 2011, Plaintiff followed-up with Dr. Malosky where he reported an allergic reaction to Plavix, no chest pain, and no swelling. (Tr. 347). At a follow-up the next month, it was noted Plaintiff had no complaints and regular heart rate and rhythm, but was not compliant with his medications or recommended diet. (Tr. 351).

In September 2011, Plaintiff saw Elena Olsen, M.D., who listed Plaintiff's conditions as hypertension, coronary artery disease, hyperlipidemia, and chronic anemia. (Tr. 350). The next month, Plaintiff returned to Dr. Olsen for a general check-up; she noted hypertension and prescribed Clonidine. (Tr. 349). On October 25, 2011, Dr. Malosky observed normal heart tones but reported Plaintiff had difficulty controlling his blood pressure, despite numerous medications. (Tr. 423). Over the next couple of months, Plaintiff's main complaint was dizziness. (Tr. 594, 598-99).

Plaintiff was admitted to the hospital on December 5, 2011, with atrial fibrillation; a stress test revealed borderline systolic function in the left ventricle. (Tr. 380, 386). Medication was effective at controlling Plaintiff's symptoms until December 27, 2011, when he presented at the hospital with increased heart rate. (Tr. 368, 374). At the end of December 2011, Plaintiff presented again at the hospital with atrial fibrillation and diabetic ketoacidosis; he was discharged in fair

---

2. Medical evidence from before the alleged onset date is not summarized herein. A claim for benefits must be established during the relevant time frame, *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004).
3. Plaintiff did not challenge the ALJ's severity determination as related to his various other impairments. As such, the Court will not summarize the medical evidence related to those impairments for the sake of brevity. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver).

condition the next day. (Tr. 360, 366). It was noted Plaintiff's financial situation made treatment of his recurrent atrial fibrillation difficult. (Tr. 368).

At a follow-up in January 2012, Dr. Malosky reported Plaintiff's blood pressure was well-controlled, his heart tones were normal, and he did not complain of chest pain or shortness of breath; but he did report light-headedness. (Tr. 409). Dr. Malosky noted Plaintiff's atrial fibrillation last month could be connected to his anemia and sugar control issues. (Tr. 409). At a further follow-up, Plaintiff reported frequent chest pain and occasional racing heart, but he admitted "he does not take care of himself very well." (Tr. 425). Dr. Olsen noted his hypertension was controlled on January 26, 2012. (Tr. 593). A few months later, he reported shortness of breath to Dr. Malosky but his heart and lung sounds were normal. (Tr. 684-85). Dr. Malosky also noted Plaintiff did not appear to be taking his blood sugar medication and that the shortness of breath could be explained in part by Plaintiff's anemia and lack of sugar control. (Tr. 688).

Plaintiff was admitted to the hospital again in April 2012 for hyperglycemia, weakness, dizziness, and hypotension; administration of IV insulin resolved his complaints. (Tr. 461-62). At admission, it was noted his dizziness and weakness were "most likely secondary to hyperglycemia" and may be connected to his anemia. (Tr. 466). At a follow-up, Plaintiff complained of dizziness with postural changes and shortness of breath upon exertion, but denied chest pain and palpitations. (Tr. 636). In October 2012, Plaintiff saw Ravi Pavani, M.D., complaining of shortness of breath upon exertion, occasional chest pain and palpitations, and occasional dizziness with postural changes. (Tr. 627). Upon examination, he had normal heart sounds and no murmurs, rubs, or gallops; furthermore, his hypertension, diabetes, and anemia were all well-controlled. (Tr. 629-30). On December 13, 2012, Plaintiff was seen at the hospital for increased blood pressure and heart rate; after the administration of his normal medications, Plaintiff was asymptomatic. (Tr. 471).

4

In April 2013, Plaintiff was admitted to the hospital for paraoxysmal atrial fibrillation; the administration of IV Cardizem returned him to sinus rhythm. (Tr. 505, 509). Upon admission, Plaintiff complained of weakness and shortness of breath but denied chest pain. (Tr. 505). On examination, his heart rhythm was regular, without murmurs, and normal S1 and S2 sounds. (Tr. 506, 510). Plaintiff underwent an MRI and CT scan of his brain in late April 2013 after he complained of right sided weakness and dizziness; the scans were normal and showed no signs of a stroke. (Tr. 524-27).

A few weeks later in May 2013, Plaintiff returned to the hospital with complaints of recurrent dizziness but denied any shortness of breath, chest pains, or palpitations. (Tr. 556). Plaintiff had complained of dizziness once to Dr. Pavani the month before. (Tr. 573-74). He was discharged home with a prescription for a reduced level of Clonidine, as the physician believed his dizziness was a reaction to the medication. (Tr. 558). At a follow-up on May 28, 2013, Dr. Malosky reported normal heart tones but was concerned about Plaintiff's hypertension and the onset of an anxiety syndrome. (Tr. 660).

*Opinion Evidence*

On February 9, 2012, Plaintiff underwent a functional capacity exam ("FCE") at the request of Dr. Olsen. (Tr. 427-33). Occupational therapist, Mary Kay Barnes, opined Plaintiff was incapable of performing light work on a sustained basis because he could not complete two and half hours of work without the need for rest breaks. (Tr. 427). She found Plaintiff could frequently handle and finger while seated; occasionally lift and carry ten pounds; occasionally kneel, bend, crawl, and climb stairs; but never squat, crouch, climb ladders, or work standing up. (Tr. 428). She based these restrictions on Plaintiff's shortness of breath, dizziness, decreased oxygen saturation, and decreased strength and stability in his lower extremities. (Tr. 428).

On March 21, 2012, Rama Narayanan, M.D., opined Plaintiff could frequently lift or carry less than ten pounds; stand or walk for less than two hours in a workday; was restricted in his ability to sit; and had push/pull limitations in both his upper and lower extremities. (Tr. 434-35). Dr. Narayanan did not explain the medical basis for these conclusions. (Tr. 435). Dr. Narayanan further opined Plaintiff could only occasionally balance, kneel, crouch, crawl, stoop, or climb ramps, stairs, ladders, ropes, or scaffolds; again, he did not note the medical basis for these conclusions. (Tr. 435). Dr. Narayanan also concluded Plaintiff had limited reaching abilities but did not elaborate; however, he referred to the FCE completed by Ms. Barnes. (Tr. 436). Dr. Narayanan indicated that he signed this opinion form on behalf of Plaintiff's primary care physician, Dr. Olsen. (Tr. 437).

*State Agency Reviewers*

In November 2011, Gerald Klyop, M.D., opined Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand/sit/walk for six hours in a workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; balance frequently; occasionally stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to extreme temperatures and humidity. (Tr. 118-19). He based these restrictions on Plaintiff's history of coronary artery disease and hypertension. (Tr. 118-19).

On reconsideration in March 2012, Rannie Amiri, M.D., opined Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand/sit/walk for six hours in a workday; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and had unlimited ability to balance, stoop, kneel, and crouch, but could only occasionally crawl. (Tr. 139-40). She based these restrictions on Plaintiff's obesity, poorly controlled blood pressure, and atrial fibrillation. (Tr. 140).

6

*VE Testimony and ALJ Decision*

At the hearing, the ALJ hypothesized an individual who can occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk, with normal breaks, for six hours in an eight hour day; sit, with normal breaks, for six hours a day; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally crawl. (Tr. 101). The VE stated such an individual could not perform Plaintiff's past work as a printer helper but could be a ticket seller, mail clerk, or assembler. (Tr. 101-02).

In a further hypothetical, the ALJ asked about work at a sedentary level with the following restrictions: occasionally lift ten pounds; stand or walk for two hours in a workday; sit for six hours in a workday with normal breaks; occasionally climb ramps, stairs, ladders, ropes, scaffolds; occasionally balance, kneel, crouch, crawl, and stoop; and frequent reaching in all directions. (Tr. 104). The VE again testified that other work existed in the form of an order clerk, an assembler, and a polisher. (Tr. 105).

The VE testified that if any combination of impairments prevented an individual from engaging in sustained work activity for eight hours on a regular basis, there would be no work available. (Tr. 105). She also stated if the individual was off-task more than ten percent of the day due to symptoms, he would be unable to work. (Tr. 106).

On cross-examination, another hypothetical was posed which restricted the individual to lifting or carrying ten pounds; standing or walking for less than two hours in a workday, sitting for six hours in a workday; climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally balancing, kneeling, crouching, crawling, and stooping; never operating foot controls; reaching only to shoulder level; no exposure to unprotected heights, moving machinery, or hazards; with only moderate exposure to dust, fumes, gas, chemicals, temperature extremes, vibrations, humidity, or wetness; and a restriction to only simple, routine, repetitive tasks in a low

stress environment with only limited superficial contact with others. (Tr. 107-08). The VE testified such an individual could perform the work of an order clerk, polisher, or addresser. (Tr. 108).

Plaintiff's attorney further restricted the individual to not being able to sit for six hours in a workday and needing at least three additional breaks in a workday; the VE stated there would be no jobs for him. (Tr. 108-09).

In July 2013, the ALJ concluded Plaintiff had the severe impairments of congestive heart failure, coronary artery diseases, history of acute ST elevated myocardial infarction, status-post angioplasty and stenting of the left anterior descending artery, atrial fibrillation, and paraoxysmal atrial fibrillation (collectively, a cardiac impairment); but these severe impairments did not meet or medically equal any listed impairment. (Tr. 13-16). The ALJ then found Plaintiff had the RFC to perform light work except that he was limited to only occasionally crawling or climbing ladders, ropes, scaffolds, stairs, or ramps. (Tr. 16). Considering the VE testimony and Plaintiff's age, work experience, and RFC, the ALJ found Plaintiff could perform work as a ticket seller, mail clerk, or assembler. (Tr. 20).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or

indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The Commissioner considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work,

9

and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because she failed to properly weigh the FCE completed by Ms. Barnes and subsequently relied on by Dr. Narayanan in making his opinion. (Doc. 16). This argument contains two parts: first, the FCE was consistent with the medical record and should have been given greater weight; and second, the reasons given for discounting the FCE were not supported by the evidence. (Doc. 16, at 5-15). The Commissioner argues that even if the Plaintiff is correct in arguing that the ALJ improperly weighed the FCE, it is harmless error because Plaintiff is still capable of sedentary work. (Doc. 18, at 8-9).

Preliminarily, it bears repeating that the applicable standard of review holds that even if substantial evidence supports a finding contrary to the ALJ's, this Court still cannot reverse so long as substantial evidence also supports the conclusion reached by the ALJ. *See Jones*, 336 F.3d at 447. Thus, the Court will undertake an analysis of whether the weight accorded by the ALJ, and the reasons for that weight, are supported by substantial evidence in the record.

***Weight Accorded to the FCE***

Initially, the Court must delineate the applicable standard by which this FCE is to be judged. The Plaintiff is not asserting that Dr. Narayanan's opinion, although allegedly based on the FCE, raises the required level of scrutiny to that of treating physician. (Doc. 19, at 4 n.3). Therefore, the FCE completed by an occupational therapist is the opinion of an "other source" and will be treated accordingly.

The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider opinions and evidence from "other sources", including "non-medical sources" listed in §§ 404.1513(d) and 416.913(d).

10

SSR 06-3p clarifies opinions from other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). SSR 06-3p also states other sources should be evaluated under the factors applicable to opinions from "acceptable medical sources" – i.e., how long the source has known and how frequently the source has seen the individual; consistency with the record evidence; specialty or area of expertise; how well the source explains the opinion; supportability; and any other factors that tend to support or refute the opinion. SSR 06-3p; 20 C.F.R. § 404.1527(d)(2).

In the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'". *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources', the ALJ must nevertheless "consider" those opinions". *Hatley v. Comm'r of Soc. Sec.*, 2014 WL 3670078 (N.D. Ohio); *see also Brewer v. Astrue*, 2012 WL 262632, at *10 (N.D. Ohio) ("SSR 06-3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

The ALJ gave the FCE completed by Ms. Barnes little weight because her limitations were based on the subjective report of symptoms by the Plaintiff, he was able to complete the entirety of the two and half hour exam without a break, and the medical record does not contain an etiology for Plaintiff's two main symptoms, dizziness and shortness of breath. (Tr. 19).

Both parties agree that the ALJ's first two proffered reasons are either overstated or incorrect. (Doc. 16, at 11-12; Doc. 18, at 6-7). Although Plaintiff reported his symptoms, i.e. dizziness and shortness of breath, to Ms. Barnes, it is inaccurate to state they were based solely on Plaintiff's subjective reporting. Ms. Barnes was present at the FCE and verified these symptoms with objective observations of decreased balance, lower extremity shakiness, and decreased

oxygen saturation. (Tr. 428-30). As to the ALJ's second proffered reason, she inaccurately quoted the findings of Ms. Barnes, which instead stated, Plaintiff was "[u]nable to complete the two and half hour evaluation *without* added rest periods." (Tr. 433) (emphasis added). As such, two of the ALJ's reasons for discounting the weight of the FCE are not supported by substantial evidence.

The Court next turns to the ALJ's third reason for decreasing the weight of the FCE – the symptom etiology is not contained within the record. From a review of the record it is clear that Plaintiff continually complained of dizziness and shortness of breath (*see* Tr. 589, 594, 598-99); but the ALJ was not incorrect to state the etiology was unknown. It is possible, as Plaintiff asserts, that these symptoms are the result of atrial fibrillation, but elsewhere in the record multiple doctors suggested the symptoms were secondary to Plaintiff's poor diabetic control. (*See* Tr. 409, 466, 688). In fact, normal cardiac findings have accompanied many of Plaintiff's complaints of dizziness, and he also underwent a MRI and CT scan of the brain looking for alternative causes of his weakness and dizziness. (*See* Tr. 409, 461-62, 466, 506, 510, 524-27, 627-30, 636, 684-85). Based on the record, the ALJ's statement regarding the etiology of the symptoms was oversimplified but not inaccurate.

However, even accepting that the etiology of the symptoms is unclear, the ALJ's proffered reason fails to adequately explain why the FCE was entitled to little weight. An ALJ is required to evaluate the symptoms of both severe and non-severe impairments because she is reviewing the entire medical condition. *See Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (holding once an ALJ finds one severe impairment, she "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"); *see also* 20 C.F.R. §404.1545(a)(3); SSR 96-8p. Whatever the cause – whether it be Plaintiff's cardiac impairment or diabetes-related – the ALJ was required to weigh the symptoms and the overall effect on Plaintiff's ability to work; as such, it makes no sense to discount the FCE simply because the

doctors had not tied his symptoms to a specific condition. It appears that the ALJ improperly dismissed these symptoms based on her own judgment, despite the numerous citations to their existence in the record. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings")). While the requirement to articulate reasons for granting weight to an "other source" opinion is minor, the reasons given must, if nothing else, be factually accurate and relevant to the final determination. Thus, the ALJ's reasons for discounting the FCE were inadequate and require remand.

Furthermore, the Court is not persuaded by the Commissioner's argument that regardless of the weight given to the FCE, Plaintiff is still capable of sedentary work and is thus ultimately, not disabled. (Doc. 18, at 8-9). If the FCE is credited, it restricts Plaintiff to only sitting occasionally, defined as up to 1/3 of the day. (Tr. 428, 430). This opinion would undermine the conclusion that Plaintiff can engage in sedentary work. Thus, remand is appropriate for the ALJ to properly address the FCE and its potential effect on Plaintiff's RFC.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI is not supported by substantial evidence, and therefore reverses the decision of the Commissioner and remands for further proceedings.

    s/James R. Knepp II  
United States Magistrate Judge